IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**KENNETH ALLEN BOLES, SR.,**          Case No. 3:17 CV 784

    Plaintiff,

    v.                          Magistrate Judge James R. Knepp, II

**CITY OF TOLEDO,**

    Defendant.                  MEMORANDUM OPINION AND ORDER

## INTRODUCTION

On April 12, 2015, *pro se* Plaintiff Kenneth Allen Boles, Sr. ("Plaintiff") filed a Complaint against the City of Toledo, Streets, Bridges & Harbor ("Defendant"). (Doc. 1). In the Complaint, Plaintiff alleged violations of Title VII of the Civil Rights Act of 1964, as codified in 42 U.S.C. § 2000e *et seq.* ("Title VII"). *Id.* The Court has jurisdiction pursuant to 28 U.S.C. § 1331. Currently pending before the Court is a Motion for Summary Judgment filed by Defendant. (Doc. 14). Plaintiff has not filed a response. For the reasons discussed below, the undersigned GRANTS Defendant's Motion for Summary Judgment.

## BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

Plaintiff, an African-American man, was employed by Defendant as a heavy equipment operator from September 29, 2005 until his termination on November 12, 2015. (Doc. 1-2, at 11). While employed by Defendant, Plaintiff was a member of the American Federation of State, County, and Municipal Employees ("AFSCME") Local 7 (hereinafter "the Union"), and thus

subject to the Collective Bargaining Agreement ("CBA") between the Union and Defendant. (Doc 1-2, at 12).

In his Complaint, Plaintiff alleges Defendant engaged in discriminatory conduct toward him during the course of his employment, in violation of Title VII, specifically: unlawful termination; failure to promote; unequal terms and conditions of employment; retaliation; and "intimidation of workforce". (Doc. 1, at 4).

In December 2013, Plaintiff wrote a "To Whom It May Concern" letter detailing seven alleged instances of unfair treatment and discriminatory conduct he experienced and observed while acting as union shop steward. (Doc. 1-2, at 20). He asserted:

1. He was counseled for wearing tennis shoes instead of steel-toed boots, while three Caucasian co-workers were not disciplined for the same conduct.

2. He worked as an "ERT" one week, but was not notified that position required him to work a half-hour early. Plaintiff's pay was docked as a result, and he successfully filed a grievance to receive all of his pay.

3. He was not allowed to take the foreman's test.

4. An African-American co-worker was denied an upgraded position because management lost his paperwork.

5. A newly-hired African-American female co-worker called and informed her Caucasian supervisor she was having car trouble. She was written up for being tardy to work that day, while a newly-hired Caucasian male co-worker called the same supervisor reporting the same problem, and the supervisor sent a city vehicle to pick him up so he would not be late.

6. An African-American co-worker was a "fill-in" as a "dog wagon" driver. The regular driver was in CDL classes, but was subsequently injured. A Caucasian supervisor placed a newly-hired, Caucasian co-worker in the "dog wagon" driver position, and moved the African American co-worker out of the job.

7. An African-American co-worker had an accident in a city vehicle and was drug tested, disciplined, and required to pay for the vehicle's damages. By contrast, a Caucasian co-worker drove a demolition machine into a civilian vehicle, and received no punishment.

*Id*. at 21-22.

On March 18, 2014, Plaintiff filed an official grievance with the union alleging workplace violence, and a violation of the non-discrimination pledge. (Doc. 1-2, at 29). Plaintiff asserted he was cursed at by a Caucasian co-worker and then disciplined when he reported the incident. *Id*.

On March 21, 2014, Plaintiff filed an official grievance with the union alleging he was denied an alternate "ERT" position when it was his turn. (Doc. 1-2, at 30). Plaintiff alleged discriminatory motive in the decision. *Id*.

Plaintiff resigned his position as union shop steward on March 24, 2014. (Doc. 1-2, at 19).

In September 2014, Plaintiff wrote a letter to the Mayor, human resources personnel, Equal Employment Opportunity Commission, Civil Rights Commission, and the President of the Union. (Doc. 1-2, at 24). In the letter, Plaintiff detailed frustrations about a co-worker's poor performance and noted these frustrations were previously brought to his foreman. *Id*. Plaintiff reported he had requested a meeting with the Superintendent of the Division of Streets, Bridges, and Harbor to address the co-worker's conduct, but the Superintendent refused to meet with him. *Id*. On one particular occasion, the co-worker became irate on a job site and caused a several hour long work stoppage. *Id*. Plaintiff reported the incident to his foreman. *Id*. Three days later, Plaintiff was approached by the alternate foreman with a "workplace violence" complaint lodged against him by the co-worker. *Id*. Plaintiff expressed frustration to his supervisor that the incident was not handled properly through appropriate Union procedures. *Id*. In closing, Plaintiff requested intervention by the above-listed personnel to correct the perceived injustices. *Id*.

In January and February 2015, Defendant charged Plaintiff with multiple unexcused absences, insubordination, and conduct unbecoming of a City employee. (Doc. 14-3, at 3, 5, 12). At a March 18, 2015 disciplinary hearing, a Hearing Officer found Plaintiff guilty of three charges

that warranted advanced discipline to "Step 3" in accordance with the Union Progressive Disciplinary Procedures. *Id.* at 9. According to the CBA, a violation committed by an employee at "Step 3" subjects the employee to termination. (Doc. 14-4, at 5).

On April 6, 2015, Plaintiff filed an official grievance and a request to appeal disciplinary action. (Doc. 1-2, at 14). Plaintiff asserted the discipline was disproportionate to the charges. *Id*. The grievance was denied, and Plaintiff was told to file this grievance at the appropriate level. *Id*.

In June 2015, while Plaintiff remained at "Step 3", Defendant charged Plaintiff with failure to follow direction, failure to follow procedure, violation of work rules, theft of city time, and failure to perform job duties. (Doc. 14-3, at 5). At a disciplinary hearing on August 10, 2015, the Hearing Officer found Plaintiff guilty of the charges. *Id.* However, rather than recommend termination, the Hearing Officer placed him in a "repeat Step 3" – meaning Plaintiff was allowed to continue employment with Defendant. *Id.*

On September 17, 2015, Plaintiff filed a "class action" grievance which alleged senior operators were denied their right (provided by shop rules) to exercise seniority and "bump" junior counterparts for job assignments. (Doc. 1-2, at 7).

On September 28, 2015, while Plaintiff was still at "Step 3", Defendant charged Plaintiff with insubordination. (Doc. 14-3, at 3). On October 29, 2015, a Hearing Officer found Plaintiff guilty of the charge and recommended termination. (Doc. 14-7, at 6).

On November 18, 2015, in accordance with the CBA, Plaintiff (represented by the Union) had a hearing before the Mayor's office, where his termination was upheld. (Doc. 14-7, at 1). Plaintiff also appealed his termination to the Civil Service Commission, which held a hearing on December 3, 2015. (Doc. 14-8, at 1). Plaintiff notified the Commission in writing that he would

not attend because he did not have enough time to prepare a defense. (Doc. 14-9, at 1). The Commission upheld Plaintiff's termination. (Doc. 14-8, at 2).

On January 15, 2016, Plaintiff filed a complaint with the Ohio Civil Rights Commission ("OCRC") alleging unlawful discharge and discipline. (Doc. 1-2, at 11). The OCRC found no probable cause, and dismissed the matter. (Doc. 14-10, at 2). It reached the same conclusion upon reconsideration. (Doc. 14-11, at 1).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The moving party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. Further, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *See* Fed R. Civ. P. 56(c)(3) (noting that the court "need consider only the cited materials"). The fact that the motion for summary judgment is unopposed does not relieve the Court of the task of determining whether a material factual dispute exists. *U.S.*

*v. Crooksville Coal Co., Inc*., 560 F. Supp. 141, 142 (S.D. Ohio 1982) (citing *Smith v. Hudson*, 600 F. 2d 60 (6th Cir. 1979)).

**DISCUSSION**

Plaintiff claims Defendant engaged in racial discrimination in violation of Title VII. (Doc. 1, at 3). Specifically, Plaintiff alleges Defendant violated Title VII by terminating his employment, failing to promote him, retaliating against him, providing unequal terms and conditions during his employment, and "intimidating the workforce". *Id*. at 4. In its Motion for Summary Judgment, Defendant argues Plaintiff has presented no genuine issue of material fact and therefore Defendant is entitled to summary judgment. (Doc. 14). Specifically, Defendant contends that Plaintiff failed to present evidence to support a *prima facie* case of racial discrimination. *Id*. at 13.[1] Plaintiff failed to file any opposition to Defendant's Motion. For the following reasons, the undersigned finds in favor of Defendant, and GRANTS the Motion. (Doc. 14).

Title VII - Racial Discrimination

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin". 42 U.S.C. § 2000e-2(a). Further, an employer may not "limit, segregate, or classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee" because of the employee's race. *Id*.

---

1. Defendant also contends Plaintiff's Complaint fails to state a claim upon which relief can be granted. (Doc. 14, at 6) (citing Fed. R. Civ. P. 12(b)(6)). However, Defendant also concedes that because it has attached affidavits, "a summary judgment motion remains more accurate than a Motion to Dismiss." *Id.* at 8. Because Defendant's arguments are focused on summary judgment, and because the undersigned has considered the attached affidavits, *see* Fed. R. Civ. P. 12(d), the undersigned treats the motion as one for summary judgment.

To establish a Title VII discrimination claim, a plaintiff may employ one of two methods: the direct case, or the circumstantial indirect case. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). "Direct evidence is 'that evidence which, if believed, requires the conclusion that unlawful discrimination was at least the motivating factor in the employer's actions.'" *Davidson v. Franciscan Health Sys. of the Ohio Valley, Inc*. 82 F. Supp.2d 768, 771 (S.D. Ohio 2000) (quoting *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999).

Without direct evidence of discrimination, Plaintiff must establish a *prima facie* case of disparate treatment because of his race. *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 402 (6th Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803 (1973)). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of making a *prima facie* showing of racial discrimination. *Lott v. Merrill*, 483, F. App'x 214, 217 (6th Cir. 2012). If he does, the burden of production (but not persuasion) shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id*. The plaintiff may then rebut by showing the proffered reason was pretextual. *Id*. The four-element test within *McDonnell Douglas*, modified to fit the particular sort of disparate treatment alleged in this case, requires a plaintiff to show: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the position; and 4) he was treated differently from similarly situated members of an unprotected class. *McDonnell Douglas Corp.*, 411 U.S. at 803.Here, Plaintiff is African-American, satisfying the first element of the *McDonnell Douglas* test. The undersigned therefore turns to each of Plaintiff's claims:

*Failure to Promote*

Plaintiff claims Defendant prevented him from taking the foreman's exam, despite his qualifications. (Doc. 1-2, at 21). The undersigned interprets this as a failure to promote claim. Defendant argues Plaintiff did not present any evidence establishing his qualifications, nor any promotion he was qualified for that he did not receive. (Doc. 14, at 10).

Plaintiff has not presented any direct evidence of discrimination. To show a *prima facie* case of disparate treatment based on a failure to promote, he must show he applied for and was qualified for a promotion, was considered and denied the promotion, and other employees of similar qualifications received promotions at the same time. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000).

In his Complaint, Plaintiff alleges he was eligible for the foreman's test, based on his listing on the Alternate General Foreman list.[2] (Doc. 1-2, at 21, 30). He attached what appears to be an employment record indicating he was previously classified as an "alt. general foreman." *Id.* at 9. However, Plaintiff has not presented any evidence indicating he applied to take the test, that Defendant refused his request to take the test, nor that being classified as an "alt. general foreman" qualified him to take the test. Further, he has presented no evidence that other employees of similar qualifications were treated more favorably. *See Nguyen*, 229 F.3d at 562-63. To survive summary judgment, Plaintiff must present some evidence to support his claims. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (holding summary judgment is proper when, "after being afforded sufficient time for discovery, as required by Fed.R.Civ.P.56(f)," the non-moving party does not produce evidence to support an essential element of the claim) (citing *Celotex*, 477 U.S.

---

2. Plaintiff also refers to this as the "Alt. GF list" and "alt. General Foreman". (Doc. 1-2, at 9, 30).

at 325). Plaintiff did not respond to Defendant's Motion for Summary Judgment, and the Complaint does not include "evidence on which the jury could reasonably find for the plaintiff" on the failure to promote claim. *Anderson*, 477 U.S. at 252. Therefore, Plaintiff has not presented evidence of a *prima facie* case of discrimination for failure to promote.

*Discipline and Termination*[3]

Plaintiff claims his termination, ostensibly resulting from repeated infractions prompting progressive discipline, was actually the result of discriminatory and retaliatory conduct by Defendant. (Doc. 1, at 5). Defendant argues Plaintiff did not present the evidence necessary to support a *prima facie* claim of racial discrimination as a result of discipline or termination, any disciplinary action taken was for legitimate, non-discriminatory purposes, and Plaintiff cannot show pretext. (Doc. 14, at 10-11). Here, Plaintiff was subjected to discipline and, eventually, terminated, both of which are adverse actions which satisfy the second prong of the *McDonnell Douglas* test. *See Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006) (finding an employee's discipline and termination satisfied the second prong of the *McDonnell Douglas* test). Plaintiff's qualifications, and how his similarly situated colleagues of an unprotected class were treated, are both matters in the various claims Plaintiff raises.

To support a *prima facie* claim of racial discrimination based on employer discipline, Plaintiff must present evidence showing, *inter alia*, that a comparable non-member of any protected class was treated better. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582-83 (6th Cir. 1992).

---

3. Plaintiff was not terminated based on one particular incident. Rather, Defendant progressively disciplined Plaintiff, and eventually reached termination as a consequence of progressive discipline. (Doc. 14-3, at 3, 5, 12). For that reason, the undersigned evaluates the two claims together, as the termination is a result of the progressive discipline.

This is satisfied with evidence showing that, for the same or similar conduct, he was treated differently than a similarly-situated employee who is not a member of a protected class. *Id.*

Defendant correctly asserts, however, that Plaintiff did not present evidence he was treated differently compared to similarly situated members of unprotected classes. For example, Plaintiff claims Defendant disciplined him for wearing tennis shoes instead of the required steel-toed boots, a punishment not imposed upon Caucasian co-workers doing the same thing. (Doc. 1-2, at 20). However, Plaintiff does not present records or other evidence to confirm that he was actually disciplined for this infraction, nor that others were not. Plaintiff claims he has photos to corroborate his claim, but the photos were not included in his Complaint, and he did not respond to Defendant's Motion. *Id*. As previously discussed, Plaintiff's failure to present some admissible evidence to corroborate his claims is fatal. *Street*, 886 F.2d at 1478.

In addition, Plaintiff alleges his termination was discriminatory. Proving a *prima facie* case of racial discrimination by termination requires showing that he was terminated, from a position for which he was qualified, and subsequently replaced by someone outside of that protected class or treated differently than non-protected employees. *Wright*, 455 F.3d at 707. Plaintiff was terminated, and Defendant does not dispute his qualifications. He does not, however, present evidence that he was replaced by an individual outside the protected class. Nor does he present evidence that suggests employees were treated differently or not terminated for engaging in similar behavior. Plaintiff reached "Step 3" in Defendant's progressive discipline program twice before termination. (Doc. 14-3, at 3, 5, 9). The CBA permitted termination of an employee who was at "Step 3" and subsequently committed an infraction within 36 months. (Doc. 14-4, at 6).

Plaintiff was ultimately terminated for insubordination (Doc. 14-13), and claims his termination was discriminatory because a named Caucasian employee came to work late but was

not disciplined, and other Caucasian employees were insubordinate and not disciplined. (Doc. 1-2, at 11). These claims are not supported by evidence. Plaintiff does not present evidence of his former colleagues' tardiness or insubordination going unpunished. He does not present evidence that other employees were typically granted additional disciplinary steps prior to termination. Without any evidence to support his claims of disparate treatment, Plaintiff cannot survive a summary judgment motion on his claim of discriminatory termination.

Additionally, Defendant claims Plaintiff was terminated for failing to return to work as instructed by his supervisor. (Doc. 14, at 12). If Plaintiff had presented a *prima facie* case of racial discrimination based on his termination, Defendant then bears the burden of proving the discipline was based on a legitimate, nondiscriminatory reason. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 651 (6th Cir. 2015). Employers have legitimate cause to discipline or terminate employees who refuse to follow an employer's directions. *Id*. at 652. Though charges of insubordination can be a mere cover for otherwise discriminatory behavior[4], Defendant presented evidence it terminated Plaintiff for refusing to return to work after multiple instructions from his supervisor. (Doc. 14-3, at 4). This explanation of his termination satisfies Defendant's burden to provide a legitimate, non-discriminatory reason for the discipline. *Lott*, 483 F. App'x at 217. Thus, the burden shifts back to Plaintiff to show a pretextual reason for the discipline he received. *Id*. He has not done so. As such, even if Plaintiff could establish a *prima facie* case, Defendant would still be entitled to summary judgment.

---

4. "Indeed, there may be some instances when the allegedly insubordinate act may be a response to a sort of unspoken, subliminal discrimination in the workplace. For example, a woman who takes a strong position may be considered 'pushy,' whereas a man who does the same is 'assertive.' One manager may call a black man 'aggressive' and a Caucasian man 'passionate' for the same speech." *Yazdian*, 793 F.3d at 651.

*Unequal Terms and Conditions*

Plaintiff also alleges a claim based on unequal terms and conditions of employment. (Doc. 1, at 4). Claims that members of a protected class are subject to unequal terms and conditions of employment are interpreted under a disparate treatment framework. *See Moore v. Univ. of Memphis,* 2013 U.S. Dist. LEXIS 176233 at *43-44, 50 (W.D. Tenn.) (dismissing an unequal terms and conditions claim after analyzing it as a disparate treatment claim). To prove a *prima facie* case of disparate treatment, Plaintiff must show he was treated "less favorably than others because of [his] race." *Lott,* 483 F. App'x at 217.

Here, Plaintiff's claims include one example of unequal terms and conditions. (Doc. 1-2, at 20-21). Plaintiff alleges he was the lone employee not notified that working as an "ERT" meant coming to work a half-hour early, but presents no evidence to support that other employees knew about the difference in time, or that the relevant supervisor informed other employees filling in that role about the different shift time but not him. *Id.* Because Plaintiff has not presented any evidence to satisfy this element of his *prima facie* case, he cannot survive summary judgment on this claim.

*Retaliation*

Plaintiff claims Defendant disciplined, terminated, and otherwise treated him unfairly in retaliation for his repeated opposition to Defendant's allegedly discriminatory practices. (Doc. 1-2, at 11). Plaintiff served as a union shop steward, and repeatedly filed grievances concerning perceived discriminatory practices. *Id.* at 4-7, 14, 19, 29-31. Defendant claims Plaintiff lacks evidence supporting a *prima facie* case of retaliation, and that any adverse action taken was for a legitimate, non-discriminatory reason. (Doc. 14, at 11-12).

To prove a *prima facie* case of retaliation, Plaintiff must show he was engaged in activity protected by Title VII, that the exercise of such activity was known by Defendant, that Defendant took materially adverse action against Plaintiff, and that a causal connection between the protected activity and the adverse action exists. *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007). The last element requires evidence of but-for causation. *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) ("Title VII retaliation claims 'must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'") (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

Plaintiff has presented no such evidence. He claims, after filing an official grievance in response to workplace violence and discrimination, that he was disciplined for the incident. (Doc. 1-2, at 29). However, he presents no evidence of said discipline, let alone that his grievance was a but-for cause of his discipline. Plaintiff cannot rely on "mere allegations" and "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Plaintiff fails to present specific facts supported by sufficient evidence. *Celotex*, 477 U.S. at 323. As such, he cannot survive summary judgment on this claim.

*Hostile Work Environment*

Finally, Plaintiff asserts a claim for "intimidation of workforce". (Doc. 1, at 4). In support, he includes descriptions of claims of disparate treatment of African-American colleagues. (Doc. 1-2, at 20-22). The undersigned interprets this as accusing Defendant of creating a hostile or abusive work environment.

To establish a *prima facie* hostile work environment claim, Plaintiff must show that he was subject to unwelcome harassment, that the harassment was based on race, and that the harassment

13

unreasonably interfered with his work performance. *Bradley v. Arwood*, 705 F. App'x 411, 417 (6th Cir. 2017). A hostile work environment is created by a series of actions, each of which may not be actionable individually. *Clay v. UPS*, 501 F.3d 695, 708 (6th Cir. 2007).

Defendant asserts claims concerning other individuals in protected classes do not satisfy the requirement that *Plaintiff himself* was subject to unwelcome harassment. *Bradley*, 705 F. App'x at 417. Additionally, he has presented no evidence to show the environment interfered with his work performance. He also does not adequately support the assertions in his Complaint with admissible evidence, even if those claims were sufficient to build a *prima facie* case. As such, Plaintiff has failed to show a genuine issue of material fact as to his hostile work environment claim.

## CONCLUSION

Plaintiff did not respond to Defendant's Motion for Summary Judgment. His Complaint did not include admissible evidence to support the allegations contained therein. Without evidence to support Plaintiff's claims, and upon review of the record, the undersigned finds there is no genuine issue of material fact and Defendant is entitled to judgment as a matter of law. As such, Defendant's Motion for Summary Judgment (Doc. 14) is GRANTED.

    s/James R. Knepp II
United States Magistrate Judge